# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 19, 2003

## LEE ROY GASS v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Hamblen County
#### No. 02CR058    James E. Beckner, Judge

---

#### No. E2002-02146-CCA-R3-PC
#### October 10, 2003

---

The petitioner appeals from the post-conviction court's denial of his petition for post-conviction relief. He claims he received ineffective assistance of counsel at trial. After careful review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Douglas L. Payne, Greenville, Tennessee, for the appellant, Lee Roy Gass.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and James Goodwin, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Lee Roy Gass, seeks post-conviction relief from his convictions and effective 27-year sentence for aggravated rape, burglary, and official misconduct. His March 8, 2000 convictions were affirmed by this Court on direct appeal. See State v. Lee Roy Gass, No. E2000-00810-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 498 (Tenn. Crim. App. July 3, 2001, at Knoxville).

The petitioner alleged a number of deficiencies on behalf of his trial counsel that the petitioner claimed were instances of ineffective counsel. The following are the specific lapses of counsel claimed by the petitioner:

   a. failure to communicate the State's plea offer;
   b. failure to procure testimony of the doctor who performed rape kit tests;
   c. failure to develop witnesses to attack the victim's credibility;
   d. failure to acquire affidavit on exculpatory witness;

e.  failure to associate with an experienced attorney;
f.   failure to object to evidence of non-linked saliva on victim's breasts;
g.  failure to obtain services of a private investigator;
h.  misleading the petitioner by continuous assurances of a "winnable case;" and
i.   Failure to discover and present recantation proof through the victim's cellmate.

The petitioner's trial counsel was the initial witness at the post-conviction hearing. Counsel had begun his practice of law on November 1, 1999. The petitioner's trial was conducted on March 8, 2000. Counsel had defended one other client in a criminal jury case. As a part of his preparation, counsel sought advice from two more experienced attorneys concerning evidentiary matters. The petitioner had, prior to his arrest, given three contradictory and inconsistent statements affecting his credibility. This made it problematic for the petitioner to testify at trial and present yet another version. Counsel, in conjunction with the petitioner, developed a strategy to focus on and attack the victim's credibility. A decision was reached that the petitioner would not testify. Counsel had determined there would be no corroborating medical testimony and considered the physical evidence slight. Counsel had filed pretrial discovery motions and had received voluntary compliance with these. Consequently, no pretrial hearings were held.

A plea offer was made by the State for a nine-year sentence. Counsel discussed the offer with the petitioner on the same day it was received. The petitioner declined to accept the offer.

A physician had conducted an examination of the victim for evidence of rape and found no physical evidence. Counsel did not procure the doctor's testimony as he felt the absence of medical proof gave more focus to the attack on the victim's credibility. A TBI report was negative as to the presence of semen on the victim's panties, panty liner, the vaginal swab, and paper towels at the scene. The report's results were elicited from Detective Kilgore. The petitioner's counsel did not object to the testimony of this officer concerning saliva of unknown origin on the victim's breast.

After the trial, counsel interviewed Robin Long, a former cellmate of the victim at the Hamblen County Jail. Counsel obtained an unsworn statement from Long which indicated the victim had consensual sex with the petitioner and was not raped. At the motion for new trial, this was not accepted as qualifying as newly discovered evidence and was characterized by the trial judge as merely cumulative to other impeaching evidence. Ms. Long was not subpoenaed nor did she testify at the new trial motion.

Counsel testified as to his unsuccessful efforts to investigate a possible allegation of sexual assault made by the victim against a doctor at Lakeshore Mental Health Center. On cross-examination, counsel stated he met with the petitioner on numerous occasions, and they went together two or three times to locate and interview witnesses in preparation for the trial. Counsel shared all the information he had gathered with the petitioner. They discussed the consequences of a felony conviction on the petitioner's constable status.

Amy Gass, daughter of the petitioner, related that trial counsel had mentioned the plea bargain to her. She later questioned the petitioner, and he said he was unaware of a plea offer. On cross-examination, she said the petitioner did not discuss all details of the case with the family.

Robin Long, the victim's former cellmate, was the next to testify. On direct testimony she stated that the victim had said the sex was consensual with the petitioner and that she claimed rape only because the petitioner would not give her $30. On cross-examination, Ms. Long said the victim had given seven different "stories." On some occasions, the victim described it as rape and at other times denied it was rape. Ms. Long did not speak with the petitioner's counsel until after the petitioner's conviction.

Norma Deery was an inmate at the Hamblen County Jail with the victim after the petitioner's trial. The victim told Deery that she had known the petitioner before the rape incident and there had been sexual contact but the petitioner had not raped her.

The petitioner testified that he was not informed by his counsel of a plea offer. He did meet with counsel a few times and once they went together to interview trial witnesses. The petitioner, based on his understanding and the word of his counsel, was optimistic for a good result at trial. On cross-examination, the petitioner admitted that he had lied in at least one of his statements given to the investigating officers. The petitioner insisted he was not informed of a plea offer by his counsel.

The trial judge issued a memorandum opinion denying post-conviction relief. The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this Court is bound by the findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

## Analysis

The petitioner insisted he was not informed by his counsel of a plea offer made by the State. This is in direct contradiction to the counsel's testimony and was found not credible by the trial judge. The petitioner's testimony at the post-conviction hearing was evasive and did not preponderate against the trial judge's findings.

The decision to refrain from calling as a witness the doctor who performed the rape kit examination was in the trial judge's words a "reasonable strategy in retrospect as well as [in] . . . foresight." The results of the test were negative, and counsel believed the absence of the testimony highlighted the credibility issue, their central strategy. We agree with the trial court and find this allegation is without merit.

The petitioner complains of counsel's failure to develop witnesses to attack the victim's credibility. In fact, two witnesses were produced and were able, to a degree, to cast doubt on the victim's credibility. In addition, counsel was successful in creating credibility doubts on cross-examination of the victim. Further impeachment witnesses would have been cumulative.

The trial judge explained that the complaint of the petitioner concerning counsel's failure to associate an experienced attorney was misplaced. Trial counsel was court-appointed, and the matter was a non-capital case. However, counsel did avail himself of the advice of two other lawyers.

The trial judge explained that, had counsel sought funds for an investigator or expert, they would probably have been provided. However, the trial judge observed, "There's no suggestion today as to what any expert could have done that was not done." The petitioner has failed to show prejudice.

Trial counsel freely admitted that he thought, prior to trial, that the petitioner had a "winnable case." The petitioner now claims he was misled by counsel's assurances. The post-conviction judge determined that the petitioner was aware of the plea bargain offer and chose not to accept those terms or make a counter-offer. The petitioner has not shown his will was overborne by counsel's attitude.

The petitioner complains of the State entering evidence of saliva on the victim's breasts without objection of his counsel. The saliva was not linked to the petitioner by the tests performed, and the presence of saliva was admissible evidence. Objection by counsel would have been a fruitless exercise.

We next consider the petitioner's allegations concerning the failure to preserve and present Robin Long's testimony as newly discovered evidence. Counsel had interviewed Long, the victim's cellmate, after trial and prepared a statement signed by Long and witnessed, but it was not a sworn affidavit. Nevertheless, its contents were considered by the trial judge at the new trial motion. The statement essentially claimed that the victim told Long that the petitioner had not raped her, that the victim had offered the petitioner sex for money, and implied that the victim was willing to lie as a witness. This statement included the fact that Long had not spoken to the petitioner or his counsel until March 30, 2000, subsequent to the trial.

The petitioner now claims that, but for counsel's negligence in failing to discover and produce this witness at trial, the outcome would have been different. This issue has been previously considered and determined. See Tenn. Code Ann. § 40-30-206(f). The petitioner cited as error the trial court's denial of the new trial motion based on the newly discovered evidence on the direct appeal. State v. Lee Roy Gass, No. E2000-00810-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 498 (Tenn. Crim. App. July 3, 2001, at Knoxville). In addressing this issue and, specifically, Long's proposed testimony, this Court observed:

> Moreover, even assuming the exercise of reasonable diligence by the appellant and defense counsel and acknowledging the materiality of the proposed testimony, we cannot conclude that the testimony would "probably" result in an acquittal. In reaching our conclusion, we note that the appellant's own lack of credibility undoubtedly played a crucial role in the jury's resolution of this case in favor of the State and further note the questionable credibility of the source of the proposed testimony. This issue is without merit.

Id. at 44. The trial judge made his findings of fact with the benefit of having observed the witnesses' demeanor and testimony both at trial and at the post-conviction hearing. The record before us supports these findings and does not preponderate against them. Therefore, we are bound to accept the factual findings. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In this case, the jury was

given ample reason, if it chose, to reject the testimony of the victim.  As noted by the trial judge, the petitioner's own contradictory words were apparently a large factor in the jury's verdict.

We have carefully reviewed each issue raised in this post-conviction appeal and concluded that the post-conviction judge's findings of fact are not outweighed by a preponderance of the evidence in the record.  Therefore, we conclude the petitioner has failed to prove the ineffectiveness of counsel, and we affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, JUDGE